**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

MARVIN AMERSON,
REG. #13018-07645                                                                                        PLAINTIFF

v.                                           2:11-cv-00130-BSM-JTK

T. C. OUTLAW, et al.                                                                                  DEFENDANTS

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge Brian S. Miller. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

1

2.  Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.  The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. Introduction

This matter is before the Court on the Motion to Dismiss filed by Defendants Reynolds and Trigg (Doc. No. 83), which this Court later construed as a Motion for Summary Judgment (Doc. No. 114).[1] Defendants filed a supplemental brief (Doc. No. 117), together with a statement of facts in support (Doc. No. 116), to which Plaintiff filed Responses (Doc. Nos. 107, 121).

---

[1] Pursuant to FED.R.CIV.P. 12(d), the Court then provided the parties with the opportunity to present materials pertinent to a summary judgment motion.

2

Also pending before the Court is the Motion for Summary Judgment filed by Defendants Outlaw and Smith (Doc. No. 119), to which Plaintiff filed a Response (Doc. No. 122).

Plaintiff Marvin Amerson is a federal inmate confined at the West Tennessee Detention Facility. He originally filed this civil rights action pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971), the Federal Tort Claims Act (FTCA), and the Administrative Procedure Act (APA), alleging unconstitutional conditions of confinement at the Federal Correctional Institution (FCI), Forrest City, Arkansas. By Order dated May 4, 2012, the Court dismissed Plaintiff's FTCA, Fourteenth Amendment and APA claims, together with originally-named Defendants Maldonado and Watts (Doc. No. 52). The Court also granted Plaintiff's Motion to Amend his Complaint on June 15, 2012, to identify previously-named John Doe Defendants as Defendants Reynolds and Trigg (Doc. No. 58).

Specifically, Plaintiff alleges that Defendants violated his Eighth Amendment rights by failing to eradicate a "toxic black mold" problem from the FCI facility, which caused him numerous health problems, beginning in 2005. (Doc. No. 14, p. 10.) Plaintiff asks for monetary and injunctive relief from Defendants.

## II. FACTS

According to Plaintiff's Amended Complaint (Doc. No. 14) and his Responses to Defendants' Motions, he arrived at FCI in 2003, and by 2005 began suffering from numerous health problems, such as congestion, cough, bleeding of the nose and ears, vertigo, and

bloody stools. In July, 2008, he became extremely ill and his appendix was removed. Following his hospitalization, he suffered from high blood pressure. In 2009, a staff member told Plaintiff about a deadly black mold in the facility which caused illnesses to both staff and inmates. In December, 2010, hundreds of inmates at the facility became severely ill with vomiting and diarrhea. Plaintiff approached Warden Outlaw and Officer Smith about the mold problems, and was told that OSHA had given the facility "a clean bill of health," (Doc. No. 14, p. 5). However, he claims that although numerous mold-infested walls were removed, the mold immediately returned. He also claims many inmates removed the molded walls without proper safety equipment and improperly disposed of the contaminated materials. He claims to suffer from chest and other bodily pains, high blood pressure, and numerous other maladies as a result of his exposure to the mold.

Plaintiff also claims Defendants Reynolds and Trigg, as employees of the Occupational Safety and Health Administration (OHSA), improperly failed to close down the facility after inspecting it and finding evidence of mold.

## III.    Summary Judgment Motions

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb

v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A. Defendants Reynolds and Trigg (Doc. Nos. 83, 117)

According to Defendant Reynolds' Declaration (Doc. No. 117-1), he is the Area Director for OSHA in Little Rock, and at the time Plaintiff filed his lawsuit, Defendant Trigg was the Assistant Area Director for the OSHA in Little Rock. In September, 2009, following the submission of a complaint to Senator Blanche Lincoln's Office, Defendant Trigg inspected FCI, Forrest City. (Id. at p. 1.) He then completed a case file which disclosed that employees who remove water damaged sheetrock in the inmate housing shower areas are exposed to the hazard of breathing mold spores. (Id. at pp. 1-2.) Reynolds reviewed Trigg's file and decided to issue a Hazard Alert Letter to the Warden of FCI, Defendant Outlaw. (Id. at pp. 4-5.) The letter (signed by Trigg for Reynolds) informed Outlaw of Trigg's findings, noting that "[t]here is no practical way to eliminate all molds and mold spores in the indoor environment." (Id.) The letter included several recommendations for eliminating or reducing the exposure of employees to mold spores. (Id.) Defendant Smith, who is the Safety

Manager for FCI, Forrest City, responded by letter to Reynolds in October, 2010, indicating numerous measures which had been taken in response to the recommendations. (Doc. No. 120-1, pp. 42-43.)

In support of their Motion, Defendants state that Plaintiff cannot show that they acted with deliberate indifference to his serious health and safety needs as a result of the inspection they conducted and the conclusions they reached. According to Defendant Reynolds' Declaration, OSHA does not have clearly established standards to address mold, and when mold is discovered, a citation can be issued pursuant to 29 C.F.R. 1910.141, which addresses sanitation of places of employment. (Doc. No. 117-1, pp. 1-2.) Otherwise, OSHA may issue a citation under Section 5(a)(1) of the Act, which is known as the "General Duty Clause", and which addresses a hazardous condition where no standard applies. (Id. at p. 2.) After Reynolds reviewed the case file prepared by Trigg, he concluded that the criteria for issuing a citation under either the sanitation provisions or the General Duty Clause were not met, and opted to issue a Hazard Alert Letter suggesting corrective action, as provided under the OSHA Field Operations Manual (FOM), 4-27. (Id.; Doc. No. 84-1, p. 8.)

Defendants state that the OSHA statutes give inspectors discretion in deciding to issue citations, and that covered employees (of which Plaintiff is not) do not have the right to appeal the agency's decision not to issue a citation, citing Heckler v. Chaney, 470 U.S. 821, 831 (1985). Furthermore, Defendants state that although inmates who work at tasks similar to those found in the private sector are considered employees under the Act, Plaintiff was not such an employee and was not working in the areas during the time in question. See FOM,

Doc. No. 84-1, p. 11.

As federal employees, Defendants also state they are entitled to qualified immunity, because they did not violate any clearly-established law, and that Plaintiff cannot establish how their actions violated his rights.  Finally, they state Plaintiff cannot show that they acted with deliberate indifference to his safety needs, because deliberate indifference requires more than negligence or ordinary lack of due care, citing Dulany v. Carnahan, 132 F.3d at 1239.

**B.     Plaintiff's Responses (Doc. Nos. 107, 121)**

In Response, Plaintiff states that Defendants' failure to close down the facility following the September, 2009, inspection constituted deliberate indifference to his health and safety needs.  He claims Defendant Trigg falsely reported, following his inspection, that "employees" were removing the affected drywall, when in fact, untrained and non-professional inmates were involved in the work.  Upon verification that the mold existed, Defendants should have known that requiring inmates to continue to work and live in the area would be unsafe and deadly, in violation of the General Duty Clause of the Act.  Plaintiff adds that OSHA ordered that a federal fire station in Fayetteville, Arkansas, be closed in September, 2010, due to mold, and questions why Defendants did not take similar measures with FCI.  He states that in addition to his own physical ailments, numerous other inmates have filed grievances complaining about mold-related illnesses, and numerous deaths have occurred at the facility since 2005.  Finally, he states that a subsequent OSHA warning letter, issued March 13, 2012, addressed additional complaints about mold at the facility, thereby proving Defendants' failure to take seriously the issue in 2009.

### C. Defendants Outlaw and Smith (Doc. No. 119)

Defendant Outlaw was Warden of the FCI from 2007 until his retirement in 2011, and Defendant Smith became Safety Manager in September 2009. At the time of Smith's arrival at the facility, mold had been detected in the shower/bathroom areas of the housing units, and corrective measures were initiated, including the removal of ceiling tiles and the cleaning and removal of bathroom walls. (Smith Declaration, Doc. No. 120-1, pp. 7-8.) This corrective work was conducted under the supervision of several staff members who attended a forty-hour Mold Remediation Contractor Course in August, 2009. (Id. at p. 8.) In addition, air samples which were taken at various locations of the facility in June, 2009, showed that the fungal concentration level in the tested areas was lower than the level outside of the housing units. (Id.) Additional air samples taken in August, 2009, also showed that the levels of contaminants in the tested areas were similar to those in the air outside of the housing units. (Id.) In September, 2009, Smith received notice of an OSHA inspection, following a complaint about mold, and later followed the recommendations submitted. (Id.) Since his arrival at FCI, Smith states the maintenance crew has completed the following: removed ceiling tiles from the housing unit bathroom and shower areas to improve air flow and ventilation, washed bathroom walls with a bleach and water solution, removed bathroom walls with severe moisture buildup, repainted walls with a mildew-cide additive for mold resistance, adjusted air ducts to improve air flow, replaced lighting fixtures to improve lighting for better moisture detection, repaired plumbing leaks, and cleaned and dried and insulated water pipes to prevent moisture build-up. (Id. at pp. 8-9.) In addition, following

a March 13, 2012, OSHA letter notifying him of an additional complaint, he visually inspected each area except the inside of the ventilation ducts, finding mold and mildew in one area of pipe in the shower/restroom of the Wynne Bravo housing Unit. (Id. at p. 9.) He arranged for air testing, which revealed a mold strain present in the Wynne Bravo housing unit only, and conducted the following work: spraying overhead pipes in the shower area with bleach and water, removing pipe insulation in the Wynne Bravo housing unit, covering sweating pipes with insulation to reduce moisture, cleaning air duct to increase air flow, and changing insulation to foam instead of fiberglass. (Id. at p. 10.) Defendant also utilized a machine in the housing units called a "roto brush," which is designed to clean the interior of the air duct to improve air circulation and ventilation, and to prevent build-up. (Id.) Finally, Smith states that he and his staff closely monitor areas which are high in humidity and prone to accumulation of moisture. (Id.)

Defendants also note that the widespread illness to which Plaintiff referred in his Complaint occurred in June, 2009, and was caused by an inmate who arrived at the facility infected with the Norwalk or Norovirus. See Declaration of Brenda Hoy, Assistant Health Services Administrator and former Infectious Disease Coordinator for FCI, Doc. No. 120-1, pp. 100-101. Defendants provide excerpts from Plaintiff's medical records to show that prior to his arrival at FCI in 2003, he suffered some of the same symptoms about which he currently complains, and has a strong family history of high blood pressure and heart disease. (Doc. No. 120-1, pp. 78-99. See also January 21, 2011, notes of Dr. Howard Chang, who noted a family history of heart and stroke conditions and examined him for chest pain and

breathing complaints, Doc. No. 120-1, pp. 97-98.)

Based on these submissions, Defendants state that Plaintiff cannot support a finding of deliberate indifference to his health and safety. First, Plaintiff provides no evidence that Defendant Warden Outlaw was personally involved in the incidents at issue. According to his discovery responses, although he was kept informed of the situation, he entrusted the corrective measures to the safety and facilities staff. (Doc. No. 120-1, pp. 2, 5.) The doctrine of respondeat superior does not apply in Bivens actions, and therefore, government officials cannot be held vicariously liable for the misconduct of their subordinates. See Tallmann v. Regan, 846 F.2d 494, 495 (8th Cir. 1988). Next, the evidence shows that Defendant Smith acted to ensure numerous repairs and abatements following the OSHA complaint letters, and such actions do not support a finding that he consciously disregarded a substantial risk of harm as set forth in Farmer v. Brennan, 511 U.S. 825, 839 (1994). Defendants further note that similar cases involving inmate claims due to mold have found the allegations insufficient to support a constitutional claim for relief. See Mayes v. Travis State Jail, 2007 WL 1888828 (W.D.Tex. 2007) (no proof of a physical injury to plaintiff); Smith v. Fox, 2006 WL 2090170 at *8 (D.S.C. 2006) (no proof of serious physical or emotional injury rising to a serious deprivation of a basic human need); Gill v. Shoemate, 2006 WL 1285412 at *5 (W.D.La. 2006) (alleged injuries of headaches and eye and throat irritation were de minimis); Jordan v. Franks, 2010 WL 4007641 (S.D.Ga. 2010); and May v. United States of America, 2:12-cv-00019 (E.D.ARk. 2012). Defendants also state they are entitled to qualified immunity because Plaintiff's allegations against them fail to support a constitutional claim for relief.

**D.     Plaintiff's Response (Doc. No. 122)**

Plaintiff states that since 2005, over twenty-five inmates at FCI have died. He denies that the Norovirus caused the June, 2009, quarantine and states that an FCI foreman, Billy Phillips, became very sick following his exposure to black mold. He claims to have written letters to the Environmental Protection Agency (EPA), but that they refused to take action. He also states that Defendants' attempts to remedy the mold problem did not stop or eliminate it and that when he left the facility in September, 2012, he could see black mold on walls. Although he was not housed in the Wynne Bravo unit, he states other inmates told him that each housing unit encountered the same water and mold issues. In addition, even though staff conducts monthly inspections, that does not mean that the problems were addressed. He states that he should not be suffering from high blood pressure, since he eats the right kind of foods and exercises regularly. He also believes that he suffers from some type of cancer, because he experiences body pains and shortness of breath and was never sick until he arrived at FCI. Since the Defendants were aware of the existence of the mold and of sick inmates and staff, they should not be entitled to qualified immunity.

**E.     Analysis**

"A Bivens claim is a cause of action brought directly under the United States Constitution against a federal official acting in his or her individual capacity for violations of constitutionally protected rights." Buford v. Runyon, 160 F.3d 1199, 1203, n. 6 (8th Cir. 1998). In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan,

511 U.S. 825, 834 (1994). Plaintiff must show that the conditions were "objectively, sufficiently serious" which resulted "in the denial of the minimal civilized measure of life's necessities" and that Defendants were deliberately indifferent to "an excessive risk to inmate health or safety." Id. However, even negligence does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995).

### 1. Defendants Reynolds and Trigg

In Jordan v. Franks, 2010 WL 5007641 *2, the Court held that "mere exposure to mold, mildew, and odors does not amount to 'an excessive risk to inmate health or safety' under the Eighth Amendment," citing Farmer v. Brennan, 511 U.S. at 834. In addition, in a similar case before this Court, an inmate who did not specify in what manner and to what extent he was exposed to mold, and who could not indicate the extent of his exposure or provide evidence that his medical ailments were caused by mold exposure, could not support an Eighth Amendment claim against the prison officials. See May v. United States of America, 2:12-cv-00019-JTK, Doc. No. 25, p. 5.

In this particular case, Plaintiff provides no evidence of deliberate indifference to support a claim against Defendants Reynolds and Trigg. Following submission of a complaint, Defendant Trigg investigated the facility. Plaintiff does not allege that Trigg was indifferent in his inspection or that he otherwise acted improperly. Rather, he faults the

Defendants' decision not to close down the facility due to the findings of mold. As noted by Defendants, OHSA statutes give inspectors discretion in deciding to issue citations. According to 29 U.S.C. § 658(a), "**[i]f**, upon inspection or investigation, the Secretary or his authorized representative **believes** that an employer has violated a requirement of section 654 of this title, ... he shall with reasonable promptness issue a citation to the employer." (Emphasis added.) In Cuyahoga Valley Railway Company v. United Transportation Union, the court held that "[i]t is the Secretary, ..., who sets the substantive standards for the work place, and only the Secretary has the authority to determine if a citation should be issued to an employer for unsafe working conditions." 474 U.S. 3, 6 (1985). In addition, "[t]o establish a violation of the General Duty Clause, 'the Secretary must prove (1) that the employer failed to render its workplace 'free' of a hazard which was (2) 'recognized' and (3) 'causing or likely to cause death or serious physical harm.'" St. Joe Minerals Corp. v. Occupational Safety and Health Review Commission, 647 F.2d 840, 844 (8th Cir. 1981), quoting National Realty & Construction Co. v. OSHRC, 489 F.2d 1257, 1265 (D.C.Cir. 1973) (other citations omitted.)

In this case, Plaintiff does not dispute that he was not an inmate employee of the facility, and he does not dispute that the OSHA statute is designed to ensure safe and healthful working conditions to "every working man and woman in the Nation.," 29 U.S.C. §651(b). Defendants exercised their professional judgment when deciding to issue a Hazard Alert Letter rather than a citation, and Plaintiff provides no evidence that such a decision was conducted in a manner deliberately indifferent to his health and safety. In addition, Plaintiff

provides absolutely no medical evidence or proof that exposure to mold at FCI is the cause of his illnesses, or that he actually has been diagnosed with cancer or other serious illnesses caused by an exposure to mold. Absent such proof, the Court finds as a matter of law that no material dispute of fact exists and that Defendants Reynolds and Trigg are entitled to judgment as a matter of law.

### 2. Defendants Outlaw and Smith

Similarly, the Court finds no evidence of deliberate indifference by these Defendants. Initially, it appears that Plaintiff's allegations against Defendant Outlaw are based on his supervisory authority only, which is not an available theory of liability in this Bivens action. See Tallman v. Regan, 846 F.2d at 495. Although Outlaw does not deny awareness of Plaintiff's complaints, Plaintiff provides no allegations that he was personally responsible for the decisions made concerning the attempts to eradicate the mold from the facility. Even assuming he was, Plaintiff again provides no proof of an intent to harm, or of reckless disregard for his health and safety. Plaintiff does not dispute that each time OSHA sent letters to the facility, the facility, under the direction of Defendant Smith, made attempts to eradicate the mold. In addition, the initial efforts to eradicate the mold were begun prior to the September, 2009, investigation by Defendant Trigg. See Smith's declaration, Doc. No. 120-1, pp. 7-8. Prior to that time, air samples of the facility were taken, and no evidence of mold appeared in the results. (Id. at p. 8.) In addition, several employees were trained in mold removal, and work had already begun to remove mold detected in the shower/bathroom areas of the housing units. (Id.) Plaintiff does not dispute that the efforts to remove the mold

14

were successful; rather he claims it quickly re-appeared, but he does not provide any proof that such was due to deliberate indifference on the Defendants' part. Defendant Smith also outlined extensive efforts taken after the March, 2012, letter, and Plaintiff again does not dispute that the only mold discovered was present in a housing unit where he was not housed. He surmises, based on unspecified information from other unknown inmates, that all housing units experienced the same problems, but such speculation does not create a dispute of material facts. Rather, Plaintiff "must set forth specific facts showing that there is a genuine issue for trial. ... [I]n order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Webb v. Lawrence County, 144 F.3d at 1135.

## IV.  Conclusion

IT IS, THEREFORE, RECOMMENDED that the Motion to Dismiss filed by Defendants Reynolds and Trigg, which this Court construes as a Motion for Summary Judgment (Doc. No. 83) be GRANTED, and Plaintiff's claims against Defendants be DISMISSED with prejudice.

IT IS FURTHER RECOMMENDED that the Motion for Summary Judgment filed by Defendants Outlaw and Smith (Doc. No. 119) be GRANTED, and that Plaintiff's claims against them be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 29th day of January, 2013.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE